## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MICHAEL CRUZ**<br>6826 Eastwood Street<br>Philadelphia, PA 19149<br>and<br>**ANSLY BERBERENA, Individually in her<br>own right, and as parent and natural guardian<br>of F.L., a minor.**<br>6826 Eastwood Street<br>Philadelphia, PA 19149 | : | **CIVIL ACTION - LAW** |
| Plaintiffs, | : | |
| v. | : | **NO.:** |
| **ROYAL TRUCKING COMPANY**<br>1323 N. Eshman Avenue<br>West Point, MS 39773<br>and<br>**ROYAL TRUCKING LOGISTICS, INC.**<br>1323 N. Eshman Avenue<br>West Point, MS 39773<br>and<br>**HAMILTON QUARTERMAN**<br>1075 N. Hairston Road, Apt. 23G<br>Stone Mountain, GA 30083<br>and<br>**JOHN DOE (1-10),** all individually and/or in<br>their capacity as agents, servants, and/or employees<br>of named Defendants.<br>and<br>**ABC CORPORATION (1-10)**, all individually<br>and/or in their capacity as agents, servants, or<br>employees of named Defendants. | : | |
| Defendants. | : | **TRIAL BY JURY IS DEMANDED** |

Pursuant to Federal Rules of Civil Procedure, and the local rules of court for the District of New Jersey, Plaintiffs, by way of Complaint against the named Defendants, say:

### PARTIES

1.      Plaintiff, MICHAEL CRUZ (hereinafter referred to as "CRUZ"), is an adult individual and a citizen and resident of 6826 Eastwood Street, in the City of Philadelphia, Commonwealth of Pennsylvania.

2.      Plaintiff, ANSLY BERBERENA, is an adult individual and a citizen and resident of 6826 Eastwood Street, in the City of Philadelphia, Commonwealth of Pennsylvania.  She is now married to plaintiff,

-1-

CRUZ.

3.      Plaintiff, F.L., is a minor individual, born on 10/08/2001, who is a citizen and resident of 6826 Eastwood Street, in the City of Philadelphia, Commonwealth of Pennsylvania. Her parent and natural guardian is her mother, plaintiff ANSLY BERBERENA, and she is now the step-daughter of plaintiff, CRUZ.

4.      Defendant, ROYAL TRUCKING COMPANY (hereinafter referred to as "ROYAL"), is believed to be a foreign corporation with a principal place of business located at 1323 N. Eshman Avenue, in the City of West Point, State of Mississippi, and is organized and existing under and by virtue of the laws of Mississippi, and its principal place of business is located in Mississippi. Therefore, this defendant is a citizen of the state of Mississippi.

5.      Upon information and belief, defendant ROYAL is a commercial motor carrier engaged in interstate and/or intrastate commerce operating under USDOT #63669 and Motor Carrier #MC-147747, and as such is subject to the Federal Motor Carrier Safety Regulations (hereinafter referred to as "FMCSRs"), which are issued by the Federal Motor Carrier Safety Administration (hereinafter referred to as "FMCSA").

6.      Defendant, ROYAL TRUCKING LOGISTICS, INC. (hereinafter referred to as "LOGISTICS"), is believed to be a foreign corporation with a principal address located at 1323 N. Eshman Avenue, in the City of West Point, State of Mississippi, and is organized and existing under and by virtue of the laws of Mississippi, and its principal place of business is located in Mississippi. Therefore, this defendant is a citizen of the state of Mississippi.

7.      Upon information and belief, defendant LOGISTICS is a commercial motor carrier/broker engaged in interstate and/or intrastate commerce, and as such is subject to the FMCSRs.

8.      It is believed and therefore averred that defendants, ROYAL and LOGISTICS, are related entities or parent, subsidiary and/or co-existing companies with identical ownership interests.

9.      Defendant, HAMILTON QUARTERMAN (hereinafter referred to as "QUARTERMAN"), is an adult individual residing at 1075 N. Hairston Road, Apt. 23G, in the City of Stone Mountain, State of Georgia.

10.     At all times relevant to this action, defendant QUARTERMAN possessed a commercial driver's license ("CDL") and therefore, was subject to the rules and regulations promulgated by the State of Georgia, the

State of New Jersey (while driving upon its streets and highways), the USDOT and FMCSA.

11.     Upon information and belief, defendant QUARTERMAN was the agent, servant, worker, employee and/or joint venture of defendants, ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), and was in exclusive operation and possession of a Tractor Trailer involved in the collision giving rise to this action, more specifically described hereafter.

12.     Defendants JOHN DOE (1-10) and ABC CORPORATION (1-10) are fictitious names used to designate as of yet unknown or unidentified parties to this action who are either independent contractors, agents, and/or employees of Defendants ROYAL, LOGISTICS, and/or QUARTERMAN. Each of JOHN DOE (1-10) and/or ABC CORPORATION (1-10) was acting within the scope of his/her/its employment, and/or with the full authority and authorization of these Defendants herein.   Defendants JOHN DOE (1-10) and ABC CORPORATION (1-10) are sued individually and in their agency and/or employment capacities.

13.     At all times relevant to this action, Defendants, JOHN DOE (1-10) and ABC CORPORATION (1-10), were and are fictitious names and entities for individuals whose names are currently unknown, and are the names of individuals, corporations, partnerships, franchises and/or business entities who through their agents, servants and/or employees may have been/or were the lessors, lessees, owners, employers, possessors, and/or operators of the tractor and trailer involved in the underlying collision.

14.     At all times relevant to this action, Defendants, JOHN DOE (1-10) and ABC CORPORATION (1-10), were and are fictitious names and entities for individuals whose names are currently unknown, and are the names of individuals, corporations, partnerships, franchises and/or business entities who through their agents, servants and/or employees, and/or through or in conjunction with ROYAL, LOGISITCS and/or QUARTERMAN, may have been/or were responsible for the design, manufacture, assembly, sale, leasing, supply, distribution, inspection, maintenance, and/or repair of the tractor and trailer involved in the underlying collision, and also may have been responsible for the employment, hiring, supervision, evaluation and training of the operator of the vehicle, defendant QUARTERMAN.

15.     At all times relevant hereto, defendant ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) was/were the registered owners, lessors, lessees, employers,

possessors, and/or operators of a tractor/cab bearing a Mississippi license tag #A407445 and the name and logo of "ROYAL TRUCKING COMPANY", and a semi trailer combination bearing license tag #067127A. The combination will be hereinafter referred to as "Tractor Trailer".

16.     At all times relevant to this complaint, Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and ABC CORPORATION (1-10), acted by and through their duly authorized officials, agents, employees, and representatives, who at all times relevant to this action acted within the scope of their employment, including plaintiff QUARTERMAN. Defendant ROYAL, LOGISTICS, JOHN DOE (1-10) and ABC CORPORATION (1-10), therefore, are responsible for the actions of each of the other defendants named in this complaint, under the doctrines of common law agency and *respondeat superior*. The actions of each of the other defendants named in this complaint therefore are imputed to the defendant ROYAL.

## STATEMENT OF JURISDICTION

17.     This case is brought under 28 U.S.C. §1332(a)(1), based upon diversity of citizenship. Because Plaintiffs are all citizens of Pennsylvania, Defendants are all citizens of either Mississippi or Georgia, respectively, and the amount in controversy (exclusive of interest and costs) exceeds $75,000.00, diversity jurisdiction exists in this Honorable Court. As the underlying collision occurred in Gloucester County, New Jersey, the proper Court venue is the United States District Court of New Jersey (CAMDEN County Office).

## FACTS

18.     On or about April 2, 2015, at approximately 1:30 p.m., plaintiff, MICHAEL CRUZ, was operating his 2006 motorcycle in a northbound direction on I-295 at or near milepost 25.7, a public interstate highway, in the Borough of Westville, Gloucester County, New Jersey.

19.     At the same date and time, defendants, ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), by and through their agent, servant, worker and/or employee, defendant QUARTERMAN, was operating a tractor cab (bearing a Mississippi license tag #A407445) and pulling an attached semi trailer (bearing license tag #067127A)(i.e. Tractor Trailer), both owned by the defendants, ROYAL, LOGISTICS and/or JOHN DOE (1-10) and ABC CORPORATION (1-10), in a northbound direction on I-295 at or near milepost 25.7, a public highway, in the Borough of Westville, Gloucester County, New

-4-

Jersey.

20.     At that same time and place, the defendants' Tractor Trailer was so negligently, carelessly and recklessly operated and controlled so as to travel behind the motorcycle upon which plaintiff CRUZ was traveling and, at a high rate of speed, strike the motorcycle in the rear, causing a severe and violent collision from which the plaintiff, CRUZ, was caused to flip forward onto the handlebars and front wheel of his motorcycle, and he and his motorcycle were dragged along the highway a distance before the defendants' Tractor Trailer finally came to a stop.

21.     At the same time and place, plaintiff ANSLY BERBERENA was operating her motor vehicle with her daughter, F.L., as a passenger, and they were traveling northbound on route I-295 near to the plaintiff, MICHAEL CRUZ.

22.     On the date and time that the previously described collision occurred, the plaintiffs, ANSLY BERBERENA and F.L. were within the zone of danger of the event, and they both witnessed the defendants' Tractor Trailer strike the motorcycle upon which plaintiff, CRUZ, was traveling, and since the Tractor Trailer then traveled past their viewpoint, they were unable to immediately see the aftermath of the collision, thereby reasonably coming to the conclusion that plaintiff CRUZ was run over and catastrophically injured and/or possibly killed by the violent collision.

23.     Following the collision, the driver of the tractor trailer, defendant QUARTERMAN, was cited by the New Jersey State Police for violations of New Jersey Statutes 39:4-96 (Reckless Driving); 39:4-97 (Careless Driving); and, 39:4-67(Obstructing Passage of Other Vehicles or Street Cars).

24.     The defendant, QUARTERMAN, was also arrested at the scene of the collision for Driving While Intoxicated and was taken to the Bellmawr State Police Station for further processing.

25.     The defendants, ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), provided and/or should have provided driver and supervisor training, and in particular, oversight of safety training and/or safety compliance for their businesses and their drivers, agents, servants, workers and employees.

26.     At all times relevant to this matter, all defendants failed to follow the standards set forth in the CDL manual and the FMCSRs, including but not limited to, standards relating to proper visual search methods,

space management, appropriate speed, and hazard perception.

27.     If Defendants, and particularly defendant QUARTERMAN, had complied with these standards, he would have traveled on the roadway at an appropriate speed and distance from other vehicles and obstacles, and not crashed into the rear of the plaintiff CRUZ' motorcycle traveling on the same roadway ahead of his Tractor Trailer.

28.     Defendants were required by federal and state regulation to instruct their commercial motor vehicle drivers, including Defendant QUARTERMAN, regarding compliance with all applicable regulations, including the CDL standards relating to proper visual search methods, space management and hazard perception.

29.     However, based upon information and belief, defendants failed to implement any comprehensive fleet safety program with its drivers to prevent commercial motor vehicle collisions, and specifically failed to provide such driver training to Defendant QUARTERMAN.

30.     Defendants, upon information and belief, failed to properly qualify Defendant QUARTERMAN to operate a commercial motor vehicle as required by federal and state adopted regulations.

31.     Defendants, upon information and belief, failed to conduct any post-crash investigation to determine or analyze the root cause of the April 2, 2015 collision, and failed to implement any disciplinary and/or corrective actions to determine how the crash could have been prevented.

32.     Defendants, upon information and belief, failed to possess the required knowledge to comply with federal regulations regarding commercial driver qualifications to reduce the risk of highway crashes.

33.     Defendants, upon information and belief, did not have in place effective policies, procedures, practices, and programs to comply with applicable federal and state safety regulations.

34.     The previously described collision was solely caused by the negligence, carelessness, and recklessness of the defendants herein, and was not due to any act or failure to act on the part of the plaintiffs.

35.     At all times relevant hereto, defendants, ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), by and through their drivers, agents, servants, workers and employees, owned, operated, controlled, leased, commissioned, and/or maintained the tractor trailer motor vehicle, and the driver of the tractor trailer, defendant QUARTERMAN, was acting within the course and/or scope of such agency,

service and/or employment.

## COUNT 1
### MICHAEL CRUZ v. ALL DEFENDANTS
### *Negligence and Respondeat Superior*

36.     Plaintiff, MICHAEL CRUZ, herein incorporates by reference the averments contained in the paragraphs 1 through 35 of this Complaint as if fully set forth at length.

37.     The collision in question was due entirely to the negligence, carelessness and recklessness of the defendants, ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), and their agents, servants, workers and employees, and consisted of the following:

(a)     Failing to have said tractor trailer under proper and adequate control at the time and under the circumstances;

(b)     Failing to give due and timely warning of the approach of the intended direction of the tractor trailer;

(c)     Failing to keep a proper look out;

(d)     Driving at a speed that was too fast for the existing conditions, including but not limited to the speed limit;

(e)     Failing to exercise a reasonable degree of care under the circumstances;

(f)     Failing to act with due regard for the rights and safety of others, including plaintiff;

(g)     Operating the tractor trailer so carelessly, recklessly and negligently that it caused a collision that resulted in the injuries to plaintiff as set forth below;

(h)     Failing to bring said tractor trailer to a complete stop upon the shortest possible notice;

(i)     Failing to keep a constant lookout ahead and around the tractor trailer and to have such control as to avoid dangers incident to the operation of a tractor trailer and to avoid unusual and/or unexpected danger in time;

(j)     Failing to be attentive;

(k)     Failing to operate a tractor trailer in a careful and vigilant manner;

(l)     Failing to slow, stop, swerve and/or initiate other appropriate steps when it was known and/or should have been known that failing the institution of same, the tractor trailer would collide with plaintiff's vehicle;

(m)     Failing to obey the road rules;

(n)     Operating a tractor trailer in a negligent manner;

(o)     Operating a tractor trailer in a careless manner;

(p)     Violating the statutes of the State of New Jersey pertaining to the operation of motor vehicles and tractor trailers;

(q)     Violating the statutes and guidelines instituted by the federal government and highway safety entities pertaining to the operation of motor vehicles and tractor trailers, including the FMCSA and the FMCSRs, including but not limited to, 49 C.F.R. §382, et seq.; 49 C.F.R. §383, et seq.; 49 C.F.R. §392, et seq., and other FMCSR violations to be discovered through disclosures, each of which constituted negligence per se;

(r)     Failing to adhere to safe driving principles expected of professional truck drivers with a commercial driver's license;

(s)     Failing to operate the tractor trailer in accordance with generally accepted safety principles and practices of the trucking industry;

(t)     Operating a commercial motor vehicle in excess of daily and/or weekly hours of service limits;

(u)     Failing to maintain a proper and adequate record of duty status as required under the FMCSR;

(v)     Operating a commercial vehicle while fatigued;

(w)     Operating a commercial vehicle while under the influence and impaired by alcohol, drugs and/or some other substance;

(x)     Failing to properly inspect the tractor trailer;

(y)     Failing to make sure the tractor and trailer were in proper working order;

(z)     Negligence per se;

(aa)    Being otherwise reckless, negligent and careless; and,

(bb)    Such other acts of negligence, carelessness and/or recklessness as shall appear through the course of discovery and/or the trial of this instant action.

38.     The aforesaid acts of defendants were the proximate cause of the subject motor vehicle collision and of the damages and injuries sustained by plaintiff, described hereafter, and the resulting damages were not caused in any way by any act or failure to act on the part of plaintiff.

39.     The defendant, QUARTERMAN, was negligent, careless and reckless because he breached his duties to drive the Tractor Trailer in a safe and reasonable manner under the circumstances, and demonstrated a conscious disregard of the known risks to plaintiffs and to the rest of the public by operating his Tractor Trailer in the manner stated.

-8-

40.     Defendant QUARTERMAN knew and/or had reason to know that operating the Tractor Trailer, as described above, was dangerous and hazardous to other drivers and persons on the roadway.

41.     Defendant QUARTERMAN, knew or had reason to know that operating the Tractor Trailer, as described above, was likely to create a high risk of danger or harm to other drivers or persons on the roadway.

42.     Despite his knowledge that driving, as described above, was likely to create a high risk of danger or harm to other drivers or persons on the roadway, defendant QUARTERMAN proceeded to operate the Tractor Trailer in conscious disregard of, or indifference to, those risks.

43.     Solely as a result of the acts, or failures to act, of the defendants, as well as defendants' careless, reckless and negligent conduct, plaintiff, MICHAEL CRUZ, was caused to sustain severe and permanent injuries to his body and person including, but not limited to, Lumbar L4-5 herniated disc with radiculopathy requiring multiple partial laminectomies, medial facetectomy, and excision, acute displaced bilateral nasal fractures, acute nasal septal fracture, lip laceration, multiple abrasions on the body and face, injuries to his neck, lower back, upper back, shoulders, knees, face, right elbow, hands, hips, and extremities, physical and mental pain and suffering and a severe shock to his nerves and nervous system, and emotional distress, some or all of which are, or may be, permanent in nature.  Plaintiff also makes a claim herein for such progressing injuries and damages and consequences of which he has no present knowledge.

44.     As a further direct result of the defendants' negligence, recklessness and carelessness, plaintiff has been, or will be, obliged to receive and undergo medical attention and care, and expend various sums of money and/or incurs various expenses to treat the injuries suffered in this collision, and which may be in excess of those medical benefits provided by statute or otherwise.

45.     As a further direct result of the defendants' carelessness, recklessness and negligence, plaintiff has experienced severe limitation of the normal pursuits of daily living habits and hobbies, duties in and about the household, and ability to do the normal chores in and about his home, and is unable to participate in normal recreational pursuits as he did prior to this incident.

46.     As a further direct result of the defendants' negligence, recklessness and carelessness, and by reason of the injuries sustained, plaintiff has suffered great pain and agony, mental anguish, embarrassment and

humiliation, and has been, and may in the future, be hindered from attending to his daily duties and functions, and occupations to his great detriment and loss.

47.    As a further direct result of the defendants' negligence, recklessness and carelessness, plaintiff has lost, and will continue to lose wages for an indefinite time in the future.

48.    As a further direct result of the defendants' negligence, recklessness and carelessness, the Plaintiff has and may suffer a severe loss of his earnings and impairment of his earning power which has been greatly diminished, if not completely lost, all of which has been and will continue to be to his great financial damage and loss, and he will continue to incur for an indefinite time in the future.

49.    At all times relevant to this action, the Plaintiff, CRUZ, was the owner of a 2006 Suzuki VZR1800 motorcycle which was in excellent physical and mechanical condition.  As a direct result of the Defendants' negligence, the plaintiff's motorcycle sustained extensive damages, rendering it a total loss, all to plaintiff's great financial damage and loss.

50.    The actions of defendants, as described above, was done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including Plaintiff.

WHEREFORE, Plaintiffs respectfully demand the following relief:  judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

## COUNT 2
### ANSLY BERBERNA v. ALL DEFENDANTS
### *Negligent Infliction of Emotional Distress and Respondeat Superior*

51.    Plaintiff, ANSLY BERBERENA, herein incorporates by reference the averments contained in the paragraphs 1 through 50 of this Complaint as if fully set forth at length.

52.    The collision in question was due entirely to the negligence, carelessness and recklessness of the defendants, ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), and their agents, servants, workers and employees, and consisted of the following:

(a)    Failing to have said tractor trailer under proper and adequate control at the time and under the circumstances;

-10-

(b)     Failing to give due and timely warning of the approach of the intended direction of the tractor trailer;

(c)     Failing to keep a proper look out;

(d)     Driving at a speed that was too fast for the existing conditions, including but not limited to the speed limit;

(e)     Failing to exercise a reasonable degree of care under the circumstances;

(f)     Failing to act with due regard for the rights and safety of others, including plaintiff;

(g)     Operating the tractor trailer so carelessly, recklessly and negligently that it caused a collision that resulted in the injuries to plaintiff as set forth below;

(h)     Failing to bring said tractor trailer to a complete stop upon the shortest possible notice;

(i)     Failing to keep a constant lookout ahead and around the tractor trailer and to have such control as to avoid dangers incident to the operation of a tractor trailer and to avoid unusual and/or unexpected danger in time;

(j)     Failing to be attentive;

(k)     Failing to operate a tractor trailer in a careful and vigilant manner;

(l)     Failing to slow, stop, swerve and/or initiate other appropriate steps when it was known and/or should have been known that failing the institution of same, the tractor trailer would collide with plaintiff's vehicle;

(m)     Failing to obey the road rules;

(n)     Operating a tractor trailer in a negligent manner;

(o)     Operating a tractor trailer in a careless manner;

(p)     Violating the statutes of the State of New Jersey pertaining to the operation of motor vehicles and tractor trailer;

(q)     Violating the statutes and guidelines instituted by the federal government and highway safety entities pertaining to the operation of motor vehicles and tractor trailer, including the FMCSA and the FMCSRs, including but not limited to 49 C.F.R. §382, et seq.; 49 C.F.R. §383, et seq.; 49 C.F.R. §392, et seq., and other FMCSR violations to be discovered through disclosures, each of which constituted negligence per se;

(r)     Failing to adhere to safe driving principles expected of professional truck drivers with a commercial driver's license;

(s)     Failing to operate the tractor trailer in accordance with generally accepted safety principles and practices of the trucking industry;

(t)     Operating a commercial motor vehicle in excess of daily and/or weekly hours of service limits;

(u)     Failing to maintain a proper and adequate record of duty status as required under the FMCSR;

(v)     Operating a commercial vehicle while fatigued;

(w)    Operating a commercial vehicle while under the influence and impaired by alcohol, drugs and/or some other substance;

(x)     Failing to properly inspect the tractor trailer;

(y)     Failing to make sure the tractor and trailer were in proper working order;

(z)     Negligence per se;

(aa)   Being otherwise reckless, negligent and careless; and,

(bb)   Such other acts of negligence, carelessness and/or recklessness as shall appear through the course of discovery and/or the trial of this instant action.

53.     The aforesaid acts of defendants were the proximate cause of the subject motor vehicle collision and of the damages and injuries sustained by plaintiff, and the resulting damages were not caused in any way by any act or failure to act on the part of plaintiff.

54.     The defendant, QUARTERMAN, was negligent, careless and reckless because he breached his duties to drive the Tractor Trailer in a safe and reasonable manner under the circumstances, and demonstrated a conscious disregard of the known risks to plaintiffs and to the rest of the public by operating his Tractor Trailer in the manner stated.

55.     Defendant QUARTERMAN knew and/or had reason to know that operating the Tractor Trailer, as described above, was dangerous and hazardous to other drivers and persons on the roadway.

56.     Defendant QUARTERMAN, knew or had reason to know that operating the Tractor Trailer, as described above, was likely to create a high risk of danger or harm to other drivers or persons on the roadway.

57.     Despite his knowledge that driving, as described above, was likely to create a high risk of danger or harm to other drivers or persons on the roadway, defendant QUARTERMAN proceeded to operate the Tractor Trailer in conscious disregard of, or indifference to, those risks.

58.     When the previously described collision occurred, the plaintiffs, ANSLY BERBERENA and F.L. were within the zone of danger of the event, and they both witnessed the defendants' tractor trailer strike the motorcycle upon which plaintiff, CRUZ, was traveling, and since the Tractor Trailer then traveled past their

viewpoint, they were unable to then see the aftermath of the collision, thereby reasonably coming to the grisly conclusion that plaintiff CRUZ was catastrophically injured and/or possibly killed by the violent collision.

59.     At all times relevant to this action and for some time prior thereto, the plaintiff, ANSLY BERBERENA was the fiancé' of plaintiff CRUZ and had, and still has, an intimate relationship with plaintiff, CRUZ.  She resided together with plaintiff CRUZ and her minor daughter, plaintiff F.L.. Currently, CRUZ and ANSLY BERBERENA are husband and wife, and F.L. is now CRUZ' step-daughter.

60.     Solely as a result of the acts, or failures to act, of the defendants, as well as defendants' careless, reckless and negligent conduct, plaintiff, ANSLY BERBERNA, was caused to sustain severe and permanent injuries to her person including, but not limited to, major depressive disorder and aggravation of major depressive disorder, panic attacks/disorder, severe emotional distress, post-traumatic stress disorder, acute anxiety, mental pain and suffering, and a severe shock to her nerves and nervous system, some or all of which are, or may be, permanent in nature.  Plaintiff also makes a claim herein for such progressing injuries and damages and consequences of which she has no present knowledge.

61.     As a further direct result of the defendants' negligence, recklessness and carelessness, plaintiff has been, or will be, obliged to receive and undergo medical attention and care, and expend various sums of money and/or incur various expenses to treat the injuries suffered in this collision, and which may be in excess of those medical benefits provided by statute or otherwise.

62.     As a further direct result of the defendant's carelessness, recklessness and negligence, plaintiff has experienced severe limitation of the normal pursuits of daily living habits and hobbies, duties in and about the household, and ability to do the normal chores in and about her home, and is unable to participate in normal recreational pursuits as she did prior to this incident.

63.     As a further direct result of the defendant's negligence, recklessness and carelessness, and by reason of the injuries sustained, plaintiff has suffered great pain and agony, mental anguish, embarrassment and humiliation, and has been, and may in the future, be hindered from attending to her daily duties and functions, and occupations to her great detriment and loss.

64.     As a further direct result of the defendant's negligence, recklessness and carelessness, plaintiff

-13-

has lost, and will continue to lose wages for an indefinite time in the future.

65.     As a further direct result of the defendant's negligence, recklessness and carelessness, the Plaintiff has and may suffer a severe loss of her earnings and impairment of her earning power which has been greatly diminished, if not completely lost, all of which has been and will continue to be to her great financial damage and loss, and he will continue to incur for an indefinite time in the future.

66.     The actions of defendants, as described above, were done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including Plaintiff.

WHEREFORE, Plaintiffs respectfully demand the following relief: judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

## COUNT 3
### ANSLY BERBERNA, as parent and natural guardian of F.L., a minor
### v. ALL DEFENDANTS
### *Negligent Infliction of Emotional Distress and Respondeat Superior*

67.     Plaintiff, F.L., a minor, herein incorporates by reference the averments contained in the paragraphs 1 through 65 of this Complaint as if fully set forth at length.

68.     The collision in question was due entirely to the negligence, carelessness and recklessness of the defendants, ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), and their agents, servants, workers and employees, and consisted of the following:

(a)     Failing to have said tractor trailer under proper and adequate control at the time and under the circumstances;

(b)     Failing to give due and timely warning of the approach of the intended direction of the tractor trailer;

(c)     Failing to keep a proper look out;

(d)     Driving at a speed that was too fast for the existing conditions, including but not limited to the speed limit;

(e)     Failing to exercise a reasonable degree of care under the circumstances;

(f)     Failing to act with due regard for the rights and safety of others, including plaintiff;

-14-

(g)      Operating the tractor trailer so carelessly, recklessly and negligently that it caused a collision that resulted in the injuries to plaintiff as set forth below;

(h)      Failing to bring said tractor trailer to a complete stop upon the shortest possible notice;

(i)      Failing to keep a constant lookout ahead and around the tractor trailer and to have such control as to avoid dangers incident to the operation of a tractor trailer and to avoid unusual and/or unexpected danger in time;

(j)      Failing to be attentive;

(k)      Failing to operate a tractor trailer in a careful and vigilant manner;

(l)      Failing to slow, stop, swerve and/or initiate other appropriate steps when it was known and/or should have been known that failing the institution of same, the tractor trailer would collide with plaintiff's vehicle;

(m)      Failing to obey the road rules;

(n)      Operating a tractor trailer in a negligent manner;

(o)      Operating a tractor trailer in a careless manner;

(p)      Violating the statutes of the State of New Jersey pertaining to the operation of motor vehicles and tractor trailers;

(q)      Violating the statutes and guidelines instituted by the federal government and highway safety entities pertaining to the operation of motor vehicles and tractor trailers, including the FMCSA and the FMCSRs, including but not limited to, 49 C.F.R. §382, et seq.; 49 C.F.R. §383, et seq.; 49 C.F.R. §392, et seq., and other FMCSR violations to be discovered through disclosures, each of which constituted negligence per se;

(r)      Failing to adhere to safe driving principles expected of professional truck drivers with a commercial driver's license;

(s)      Failing to operate the tractor trailer in accordance with generally accepted safety principles and practices of the trucking industry;

(t)      Operating a commercial motor vehicle in excess of daily and/or weekly hours of service limits;

(u)      Failing to maintain a proper and adequate record of duty status as required under the FMCSR;

(v)      Operating a commercial vehicle while fatigued;

(w)      Operating a commercial vehicle while under the influence and impaired by alcohol, drugs and/or some other substance;

(x)      Failing to properly inspect the tractor trailer;

(y)      Failing to make sure the tractor and trailer were in proper working order;

(z)      Negligence per se;

(aa)   Being otherwise reckless, negligent and careless; and,

(bb)   Such other acts of negligence, carelessness and/or recklessness as shall appear through the course of discovery and/or the trial of this instant action.

69.   The aforesaid acts of defendants were the proximate cause of the subject motor vehicle collision and of the damages and injuries sustained by plaintiff, and the resulting damages were not caused in any way by any act or failure to act on the part of plaintiff.

70.   The defendant, QUARTERMAN, was negligent, careless and reckless because he breached his duties to drive the Tractor Trailer in a safe and reasonable manner under the circumstances, and demonstrated a conscious disregard of the known risks to plaintiffs and to the rest of the public by operating his Tractor Trailer in the manner stated.

71.   Defendant QUARTERMAN knew and/or had reason to know that operating the Tractor Trailer, as described above, was dangerous and hazardous to other drivers and persons on the roadway.

72.   Defendant QUARTERMAN, knew or had reason to know that operating the Tractor Trailer, as described above, was likely to create a high risk of danger or harm to other drivers or persons on the roadway.

73.   Despite his knowledge that driving, as described above, was likely to create a high risk of danger or harm to other drivers or persons on the roadway, defendant QUARTERMAN proceeded to operate the Tractor Trailer in conscious disregard of, or indifference to, those risks.

74.   When the previously described collision occurred, the plaintiffs, ANSLY BERBERENA and F.L. were within the zone of danger of the event, and they both witnessed the tractor trailer of the defendants strike the motorcycle upon which plaintiff, CRUZ, was traveling, and since the tractor trailer then traveled past their viewpoint, they were unable to immediately see the aftermath of the collision, thereby reasonably coming to the conclusion that plaintiff CRUZ was catastrophically injured and possibly killed by the violent collision.

75.   At all times relevant to this action and for some time prior thereto, the plaintiff, F.L. had, and still has, an intimate relationship with the plaintiff, CRUZ.  They resided together with plaintiff ANSLY BERBERENA, her mother who was engaged to plaintiff CRUZ.  Plaintiff CRUZ raised plaintiff F.L. from the age of 6 months to the current time, and he is now her step-father.

76.   Solely as a result of the acts, or failures to act, of the defendants, as well as defendants' careless,

reckless and negligent conduct, plaintiff, F.L., was caused to sustain severe and permanent injuries to her person including, but not limited to, generalized anxiety disorder, severe emotional distress, post-traumatic stress disorder, mental pain and suffering and a severe shock to her nerves and nervous system, some or all of which are, or may be, permanent in nature.  Plaintiff also makes a claim herein for such progressing injuries and damages and consequences of which she has no present knowledge.

77.     As a further direct result of the defendants' negligence, recklessness and carelessness, plaintiff has been, or will be, obliged to receive and undergo medical attention and care, and expend various sums of money and/or incur various expenses to treat the injuries suffered in this collision, and which may be in excess of those medical benefits provided by statute or otherwise.

78.     As a further direct result of the defendant's carelessness, recklessness and negligence, plaintiff has experienced severe limitation of the normal pursuits of daily living habits and hobbies, duties in and about the household, and ability to do the normal chores in and about her home, and is unable to participate in normal recreational pursuits as she did prior to this incident.

79.     As a further direct result of the defendant's negligence, recklessness and carelessness, and by reason of the injuries sustained, plaintiff has suffered great pain and agony, mental anguish, embarrassment and humiliation, and has been, and may in the future, be hindered from attending to her daily duties and functions, and occupations to her great detriment and loss.

80.     As a further direct result of the defendant's negligence, recklessness and carelessness, plaintiff has lost, and will continue to lose wages for an indefinite time in the future.

81.     As a further direct result of the defendant's negligence, recklessness and carelessness, the Plaintiff has and may suffer a severe loss of her earnings and impairment of her earning power which has been greatly diminished, if not completely lost, all of which has been and will continue to be to her great financial damage and loss, and he will continue to incur for an indefinite time in the future.

82.     The actions of defendants, as described above, were done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including Plaintiff.

WHEREFORE, Plaintiffs respectfully demand the following relief:  judgment in their favor and against

all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

## COUNT 4
## ALL PLAINTIFFS v. ALL DEFENDANTS
### *Negligence Per se*

83.     Plaintiffs, MICHAEL CRUZ, ANSLY BERBERENA and F.L., herein incorporate by reference the averments in the paragraphs 1 through 82 of this Complaint, as if fully set forth at length.

84.     Defendants violated state and federal statutes and regulations by, among other things, driving an unsafe vehicle, driving at a speed that was too fast for the conditions, driving while inattentive and under the influence of a substance, driving while overly fatigued, including violations of the FMCSRs, including but not limited to, 49 C.F.R. §382, et seq.; 49 C.F.R. §383, et seq.; 49 C.F.R. §392, et seq., and other FMCSR violations to be discovered through disclosures, each of which constituting negligence *per se*.

85.     As a direct and proximate result of Defendants' ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION's (1-10) violations of state and federal statutes and regulations, as averred here and above, plaintiffs were caused to suffer severe and permanent physical and psychological injuries, and itemized losses as set forth in detail in this Complaint and incorporated herein.

WHEREFORE, Plaintiffs respectfully demand the following relief: judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

## COUNT 5
## ALL PLAINTIFFS v. ALL DEFENDANTS
### *Vicarious Liability*

86.     Plaintiffs, MICHAEL CRUZ. ANSLY BERBERNA and F.L., herein incorporate by reference the averments in the paragraphs 1 through 85 of this Complaint, as if fully set forth at length.

87.     At all relevant times, the defendant driver, QUARTERMAN, was the defendants' ROYAL,

-18-

LOGISTICS, JOHN DOE (1-10), and/or ABC CORPORATION (1-10)' agent, servant, worker, employee, and/or independent contractor, who was acting within the course and scope of his employment, under the direct control of the defendant ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10).

88.     Accordingly, the defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) are vicariously liable for the defendant driver QUARTERMAN's aforementioned negligence, carelessness and recklessness.

89.     Irrespective of the employment relationship, defendants,  ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) are interstate motor carriers subject to the Federal Motor Carrier Safety Administration Regulations and are, therefore, responsible for the acts of their drivers, including defendant QUARTERMAN.

90.     The actions of defendants, as described above, was done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including Plaintiffs.

91.     As a direct consequence of Defendants' ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION's (1-10) negligence, carelessness and recklessness as averred here and above, plaintiffs were caused to suffer severe and permanent physical and psychological injuries, and itemized losses as set forth in detail in this Complaint and incorporated herein.

WHEREFORE, Plaintiffs respectfully demand the following relief:  judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

### COUNT 6
### ALL PLAINTIFFS v. ALL DEFENDANTS
### *Negligent Hiring, Retention, Training, and Supervision*

92.     Plaintiffs, MICHAEL CRUZ, ANSLY BERBERENA and F.L., herein incorporate by reference the averments in the paragraphs 1 through 91 of this Complaint, as if fully set forth at length.

93.     At all times relevant hereto, Defendants ROYAL, LOGISTICS, JOHN DOE (1-10), and/or ABC CORPORATION (1-10) were interstate motor carriers as defined by the FMCSR, and were engaged in interstate

commerce. Therefore, defendants are subject to the FMCSRs.

94. As motor carriers, defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), had certain responsibilities as defined by the FMCSR and industry standards including the duty to properly qualify, train, and supervise the hours of service of defendant, QUARTERMAN, the duty to properly inspect and maintain its vehicles, the duty to monitor the conditions of the roadway and inform its drivers regarding same, the duty to adhere to 49 C.F.R. §392, et seq., and the duty to otherwise establish and implement necessary management controls and systems for the safe operation of its commercial motor vehicles.

95. Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) were negligent, careless, and/or reckless in hiring, retaining, training, and/or supervising defendant QUARTERMAN, their joint venturer, agent, servant, worker, and/or employee, in the following manner:

(a) Failing to exercise reasonable care in selecting QUARTERMAN to operate a commercial motor vehicle;

(b) Failing to implement an adequate program or policy to conduct background checks and failure to perform background checks before engaging drivers such as QUARTERMAN and periodic background checks thereafter to ensure drivers have and maintain a safe driving record;

(c) Failing to implement an adequate program or policy to conduct physical and mental examinations of drivers such as QUARTERMAN to ensure drivers can operate commercial vehicles safely and properly and failure to perform adequate physical and mental examinations of QUARTERMAN to ensure he could operate a commercial vehicle safely and properly;

(d) Failing to implement an adequate program or policy to properly instruct and train and failure to properly instruct and train drivers such as QUARTERMAN in the proper operation of commercial vehicles to ensure drivers can operate commercial vehicles safely and properly;

(e) Failing to implement an adequate program or policy to conduct written examinations and driving examinations and failure to perform adequate written examinations and driving examinations of drivers such as QUARTERMAN so drivers can operate the commercial vehicle safely and properly;

(f) Failing to implement an adequate program or policy to properly instruct and train and failure to properly instruct and train drivers such as QUARTERMAN on all applicable Federal, State, and Local rules, codes, regulations, and laws governing the operation of commercial motor vehicles to ensure he could operate the commercial motor vehicle safely and properly;

(g) Failing to implement an adequate program or policy to conduct written and verbal examinations and failure to perform adequate written and verbal examinations of

-20-

drivers such as QUARTERMAN to ensure drivers are fully informed and have adequate comprehension of all applicable Federal, State, and Local rules, codes, regulations, and laws governing the operation of commercial vehicles;

(h)     Failing to implement an adequate program or policy to properly instruct and train and failure to properly and adequately instruct and train drivers such as QUARTERMAN on safe driving techniques and practices before and during employment to ensure drivers can operate commercial vehicles safely and properly;

(i)     Failing to implement an adequate program or policy to properly instruct and train and failure to properly instruct and train drivers such as QUARTERMAN of the dangers of distracted driving to ensure drivers can operate commercial vehicles safely and properly;

(j)     Failing to implement an adequate program or policy to enforce and reinforce existing programs and/or policies and failure to properly enforce existing programs and/or policies designed or intended to ensure drivers such as QUARTERMAN would operate commercial vehicles in a safe and proper manner;

(k)     Failing to exercise reasonable care over the manner in which QUARTERMAN operated the commercial vehicle on April 2, 2015;

(l)     Failing to implement and/or maintain an adequate program or policy to perform ongoing training and instruction of drivers such as QUARTERMAN;

(m)     Failing to properly enforce driver compliance with existing policies and procedures to ensure safety while operating commercial vehicles;

(n)     Providing drivers with improper or ambiguous policies, procedures, and regulations regarding the operation of commercial motor vehicles;

(o)     Failing to perform follow up to determine whether the policies, procedures, and regulations provided to operators were effective;

(p)     Failing to enforce driver compliance with the existing policies, procedures, and regulations regarding the operation of commercial motor vehicles;

(q)     Failing to retain and maintain information and records related to Defendant QUARTERMAN and the vehicle he was operating at the time of the collision described herein;

(r)     Allowing their drivers including, but not limited to, QUARTERMAN to operate their Tractor Trailer in a fatigued state;

(s)     Allowing their drivers including, but not limited to, QUARTERMAN to operate their Tractor Trailer in an unsafe manner without reprimand or further training; and

(t)     Providing and/or allowing their drivers including, but not limited to, QUARTERMAN, to operate their Tractor Trailer without ensuring proper maintenance and/or repair the Tractor Trailer.

96.     At all times relevant hereto, Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10), knew or had reason to know that hiring, retaining, failing to train, and/or supervise defendant QUARTERMAN, as described above, was dangerous and hazardous to other drivers and users of the public roadways.

97.     Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) knew or had reason to know that hiring, retaining, failing to train, and/or supervise defendant QUARTERMAN, as described above, was likely to create a high risk of danger or harm to other drivers and users of the public roadways.

98.     Despite their knowledge that hiring, retaining, failing to train, and/or supervise defendant QUARTERMAN as described above, was likely to create a high risk of danger or harm to other drivers and users of the public roadways, Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) proceeded to allow QUARTERMAN to operate their Tractor Trailer in conscious disregard of, or indifference to those risks.

99.     The actions of Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) in hiring, retaining, failing to train and/or supervise defendant QUARTERMAN and allowing QUARTERMAN to operate their Tractor Trailer, as described above, was done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including the Plaintiffs.

100.    As a direct consequence of Defendants' ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION's (1-10) negligence, carelessness and recklessness as averred here and above, plaintiffs were caused to suffer severe and permanent physical and psychological injuries, and itemized losses as set forth in detail in this Complaint and incorporated herein.

WHEREFORE, Plaintiffs respectfully demand the following relief: judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

## COUNT 7
## ALL PLAINTIFFS v. ALL DEFENDANTS

### *Negligent Entrustment*

101.    Plaintiffs, MICHAEL CRUZ, ANSLY BERBERENA and F.L., herein incorporate by reference the averments in the paragraphs 1 through 100 of this Complaint, as if fully set forth at length.

102.    Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) acting for their mutual financial gain, negligently entrusted defendant QUARTERMAN with a commercial motor vehicle when they knew or should have known, in the exercise of ordinary care, that QUARTERMAN was an unsafe driver, and they failed to inquire as to QUARTERMAN's driving and employment history prior to entrusting him with a commercial motor vehicle and/or contracting with him to transport cargo and further:

   a. Negligently entrusted the aforementioned commercial vehicle to defendant QUARTERMAN when they knew, or in the exercise of ordinary care should have known, that said individual was not a safe operator of motor vehicles;

   b. Negligently entrusted the aforementioned commercial vehicle to defendant QUARTERMAN when they knew, or in the exercise of ordinary care, should have known that said individual would operate the vehicle in a negligent and careless manner;

   c. Negligently entrusted the aforementioned commercial vehicle to defendant QUARTERMAN when they knew, or in the exercise of ordinary care should have known, that said individual was not properly trained and/or instructed in the safe operation of the commercial vehicle;

   d. Negligently entrusted the aforementioned commercial vehicle to defendant QUARTERMAN when they knew, or in the exercise of ordinary care should have known, that said individual would operate the motor vehicle in a manner that created an unreasonable risk of harm to others; and

   e. Insofar as the subject commercial vehicle was improperly inspected, repaired, and/or maintained.

103    At all times relevant hereto Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) knew or had reason to know that entrusting their Tractor Trailer to defendant QUARTERMAN, as described above, was dangerous and hazardous to other drivers and users of the public roadways.

104.    Defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) knew or had reason to know that entrusting their Tractor Trailer to defendant QUARTERMAN, as described above, was likely to create a high risk of danger or harm to other drivers and users of the public roadways.

105.     Despite their knowledge that entrusting their Tractor Trailer to defendant QUARTERMAN, as described above, was likely to create a high risk of danger or harm to other drivers and users of the public roadways, the defendants proceeded to allow QUARTERMAN to operate the Tractor Trailer in conscious disregard of, or indifference to, those risks.

106.     The actions of defendants ROYAL, LOGISTICS, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) in entrusting the Tractor Trailer to defendant QUARTERMAN and allowing QUARTERMAN to operate the Tractor Trailer, as described above, was done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including the plaintiffs.

107.     As a direct consequence of defendants' ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) negligence, carelessness and recklessness as averred herein above, plaintiffs were caused to suffer severe and permanent physical and psychological injuries, and itemized losses as set forth in detail in this Complaint and incorporated herein.

WHEREFORE, Plaintiffs respectfully demand the following relief:  judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

**COUNT 8**
**MICHAEL CRUZ v. ALL DEFENDANTS**
***Negligent Maintenance***

108.     Plaintiffs, MICHAEL CRUZ, ANSLY BERBERENA and F.L., herein incorporate by reference the averments in the paragraphs 1 through 107 of this Complaint, as if fully set forth at length.

109.     Defendants   ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10). owed a duty to maintain its Tractor and Trailer in a safe condition and properly

-24-

equipped and maintained for use upon the public roadways.  This duty includes the obligation of exercising reasonable care in the inspection, maintenance, and repair of its Tractor and Trailer for defects or other conditions which would render it unsafe.

110.    Defendants, based upon information and belief, breached their duty to properly inspect, maintain, and/or repair its Tractor and Trailer.

111.    At all times relevant hereto Defendants, upon information and belief, knew or had reason to know that failing to maintain its Tractor and Trailer, as described above, was dangerous and hazardous to other drivers and users of the public roadways.

112.    Defendants, upon information and belief, knew or had reason to know that failing to maintain the Tractor and Trailer, as described above, was likely to create a high risk of danger or harm to other drivers and users of the public roadways.

113.    Upon information and belief, and despite their knowledge that failing to maintain the Tractor and Trailer, as described above, was likely to create a high risk of danger or harm to other drivers and users of the public roadways, defendants proceeded to allow their Tractor and Trailer on the public roadways in conscious disregard of, or indifference to, those risks.

114.    The actions of defendants in failing to maintain the Tractor and Trailer and allowing defendant QUARTERMAN to operate the Tractor Trailer on the public roadways, as described above, was done maliciously, wantonly, willfully, and/or in reckless indifference to the interests of others, including Plaintiffs.

115.    As a direct consequence of defendants' ROYAL, LOGISTICS, QUARTERMAN, JOHN DOE (1-10) and/or ABC CORPORATION (1-10) negligence, carelessness and recklessness as averred herein above, plaintiffs were caused to suffer severe and permanent physical and psychological injuries, and itemized losses as set forth in detail in this Complaint and incorporated herein.

WHEREFORE, Plaintiffs respectfully demand the following relief:  judgment in their favor and against all defendants jointly, severally and/or in the alternative, in an amount in excess of $75,000.00 (exclusive of costs and interest) for compensatory damages, together with punitive damages, interest, attorney fees, costs of suit, and any other such relief that the court may deem just and equitable.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs, MICHAEL CRUZ, ANSLY BERBERENA AND F.L., a minor, have suffered substantial and continuing injuries as a result of the alleged actions or inactions of the defendants herein, and award the following relief, as appropriate:

(a)     compensatory damages per plaintiff as this Court deems appropriate;

(c)     prejudgment interest, attorneys' fees and costs;

(d)     punitive damages against the individual and corporate defendants in their respective capacities;

(e)     such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

RAPOPORT LAW OFFICES, LLC

BY: _____

DAVID M. RAPOPORT, ESQUIRE
Attorney I.D.: 57702
1650 Market Street, 55th Floor
Philadelphia, PA 19103
(Tel: (215) 963-9393
Fax: (215) 963-9393
Email: david@legalrap.com
Attorney for Plaintiffs

Dated: 03/30/3017

## CERTIFICATION PURSUANT TO CIVIL PRACTICE RULE 4:5-1

Pursuant to the provisions of Rule 4:5-1, the undersigned attorney hereby certifies to the best of his knowledge information and belief that:

1.     These within matters are NOT the subject of any matters that are currently consolidated by the Court;

2.     There are no other actions or arbitration contemplated;

3.     There are no other parties known at this time who should be joined in the matter in controversy.

-26-

I certify that the foregoing statements made by me are true and correct and to the best of my knowledge, information and belief.

RAPOPORT LAW OFFICES, LLC

BY: _____
DAVID M. RAPOPORT, ESQUIRE
Attorney I.D.: 57702
1650 Market Street, 55th Floor
Philadelphia, PA 19103
(Tel: (215) 963-9393
Fax: (215) 963-9393
Email: david@legalrap.com
Attorney for Plaintiffs

Dated: 03/30/2017

-27-